UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:23-CR-00033-01** |
| **VS.** | **JUDGE TERRY A. DOUGHTY** |
| **JOSHUA BOSLEY (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Defendant Joshua Bosley moves for "for reduction of sentence and compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. No. 51]. The United States of America (hereafter, "the Government") opposes the motion. [Doc. No. 61]. For reasons below, Defendant's motion is denied.

## Background

A grand jury charged Defendant with knowingly and intentionally distributing "an amount of methamphetamine, a Schedule II controlled substance" (Count One). [Doc. Nos. 1, 2]. On June 14, 2023, the Court accepted Defendant's guilty plea and adjudged him guilty of the offense charged in Count One of the Indictment. [Doc. No. 34]. On October 4, 2023, the Court sentenced Defendant to 110 months of imprisonment and three years of supervised release. [Doc. No. 41]. Defendant is currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri.

## Law and Analysis

"A defendant moving for compassionate release must establish both extraordinary and compelling circumstances *and* that the release is consistent with the § 3553(a) factors." *United States v. Santana-Cerano*, 2025 WL 817589, at *1 (5th Cir. Mar. 14, 2025).

1

**1. Extraordinary and Compelling Reasons**

"A district court may grant a motion for compassionate release under § 3582(c)(1) only if it finds, *inter alia*, that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Austin*, 125 F.4th 688, 691 (5th Cir. 2025). Under 18 U.S.C. § 3582(c)(1)(A)(i):

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction;
>>>> . . . .
>>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The Fifth Circuit "understand[s] 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023). "'Compelling' . . . means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id.* The terms 'extraordinary' and 'compelling' "explain why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.*

"Although not dispositive, the commentary to the U.S.S.G. informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Batiste*, No. 23-30582, 2024 WL 620373, at *2 (5th Cir. Feb. 14, 2024). Under FSG § 1B1.13(b), the following may be sufficiently extraordinary and compelling reasons: (1) certain medical conditions; (2) the age of the defendant; (3) family circumstances; and (4) defendants who were victims of abuse.

Relevant here, the following medical conditions can constitute extraordinary and compelling reasons:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
> >
> > > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

FSG § 1B1.13(b)(1).

Here, Defendant states that he has a "terminal illness" in the form of a "chronic kidney disease requiring dialysis three times per week." [Doc. No. 51, pp. 2-3]. He states that his illness is terminal because he has "end-stage organ failure." *Id.* at 9. He also has hypertension. *Id.* at 3.

3

The Court does not find that Defendant presents extraordinary and compelling reasons. First, Defendant suffered from the same condition before the Court sentenced him. [Doc. Nos. 36, 39, 45]. Thus, under *Escajeda*, 58, F. 4th at 186, Defendant does not "face some extraordinarily severe exigency, *not foreseeable at the time of sentencing*, and unique to the life of the prisoner." Otherwise stated, his condition (and even marginal deterioration) *was* foreseeable at the time of sentencing.[1] *See United States v. Rollins*, 53 F.4th 353, 360 (5th Cir. 2022) ("Rollins has undoubtedly suffered and continues to suffer severely from his many health issues, and his medical condition is indeed dire. But the district court was familiar with his health issues. It considered them when it imposed his sentence . . . .").[2]

Defendant states without explanation, "Although the BOP provides a procedure by which inmates may be evaluated for and eventually receive a kidney transplant, because of the enerous [sic] nature of this process and 'a restriction placed by transplant center,' Bosley cannot be

---

[1] To be sure, FSG § 1B1.13(e), provides: "For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." However, Section 1B1.13(e), is not controlling. Further, the Court *is* considering Defendant's motion to reduce his sentence; in other words, the foreseeability of his present medical condition is not precluding consideration of his motion.

[2] *See also U.S. v. Richards*, 2023 WL 6387177, at *2 (E.D. Cal. Sept. 29, 2023), 2024 WL 2237971 (9th Cir. May 17, 2024) ("Defendant contends that his present medical conditions, including end-stage renal disease, which qualifies as a terminal illness, constitute extraordinary and compelling reasons justifying his compassionate release. Defendant suffers from a host of physical and mental ailments. However, he also suffered from most of these conditions at the time he was originally sentenced by this Court, and the Court crafted its sentence after consideration of the totality of Defendant's physical and mental state."); *U.S. v. Jones*, 2024 WL 1621246, at *3 (E.D. La. Apr. 15, 2024) ("Jones does not identify any substantial changes in his medical condition since the time of sentencing that were not already considered or known to the Court at the time of sentencing.").

evaluated for kidney transplantation incarcerated [sic]." [Doc. No. 51, pp. 7, 18]. Defendant does not specify why he is unable to participate in the BOP's "procedure" for obtaining a transplant, and he does not provide any documentation to support his contention that he is unable to obtain a transplant while incarcerated. *See U.S. v. Williams*, 2020 WL 4210476, at *2 (S.D. Miss. July 22, 2020) (denying a defendant's motion for reduction of sentence in part because the defendant "failed to cite any medical records in support of" his assertion that he requires a transplant to live). He also does not explain how he would obtain a transplant sooner if the Court reduced his sentence. He even concedes that non-incarcerated individuals must also wait several years for a transplant. [Doc. No. 51, p. 7]. In addition, Defendant does not specify if he is even a candidate for a transplant.[3]

Finally, while—as the Government appears to concede—Defendant's end-stage renal disease likely qualifies as a terminal illness under Section 1B1.13(b)(1)(A), his condition is well-managed by the Bureau of Prisons ("BOP"). The BOP is appropriately managing Defendant's end-stage renal disease and his hypertension. His medical records show that officials are closely monitoring and actively treating his chronic kidney disease and hypertension. He sees a nephrologist every month, and he undergoes dialysis three times per week. [Doc. Nos. 61-1; 61-2]. That his conditioned is managed well in prison militates against finding that his medical condition is an extraordinary and compelling reason to reduce his sentence.

---

[3] *See, e.g., U.S. v. Jones*, 2024 WL 1621246, at *3 (E.D. La. Apr. 15, 2024) ("Although Jones references a kidney transplant as a potential treatment, he has not shown that he is a candidate for such treatment or that there is a viable match."); *U.S. v. Johnson*, 2023 WL 4133020, at *4 (E.D. La. June 22, 2023).

**2. Factors Under 18 USC § 3553(a)**

Even assuming *arguendo* that Defendant's medical conditions were sufficiently extraordinary and compelling reasons to justify reducing his sentence, the Court would still deny his motion after analyzing the factors under 18 U.S.C. § 3553(a).

Defendant argues that he will be too sick and tired to reoffend if he is released. However, as above, Defendant suffered from the same condition before arrest, yet he continued to commit crimes. He was diagnosed with end-stage renal disease due to uncontrolled hypertension in 2020, before he committed the crimes in the instant proceeding. As the Government argues: "[D]espite the seriousness of his diagnosis and his condition, and despite being on dialysis, Bosley still engaged in the behavior in this case—the distribution of significant quantities of methamphetamine. Simply put, his sickness did not deter or prevent him from engaging in this criminal enterprise. As such, there is no reason to assume his health condition would restrict his criminal activities now in a way that it did not before." [Doc. No. 61, p. 10]; *see Rollins*, 53 F.4th 353, 360 (5th Cir. 2022) ("Rollins was plainly suffering from medical crises for years before his arrest. . . . [W]hile 'stricken with severe medical issues and confined to a wheelchair, Mr. Rollins still trafficked heroin' and was found with multiple weapons in reach. Rollins had committed serious crimes while suffering from severe and life-threatening medical complications. With this in mind, it is not a clearly erroneous assessment of the evidence to find that Rollins may continue criminal activity and pose a danger to the public after release.").[4]

---

[4] *See also Batiste*, 2024 WL at *3 ("Batiste had committed the convicted offenses while he was wheelchair-bound and afflicted with serious medical issues. Indeed, those extreme physical and medical impairments did not stop Batiste from managing his drug trafficking organization. Nor did they keep him from conducting drug transactions while lying in his bed next to large quantities of drugs."); *U.S. v. Jones*, 2024 WL 1621246, at *3 (E.D. La. Apr. 15, 2024) ("Generally, a court will not grant compassionate release based on medical conditions that were

Defendant therefore remains a danger to the public even in his reduced physical capacity and even assuming his condition has marginally deteriorated. *See Batiste*, *supra* (The defendant's "marginal deterioration is not so severe as to prevent him from recidivating. Batiste may be bedridden, but he remains no less capable of dealing drugs from his bed—just as he did before. In light of those facts, it was not clearly erroneous for the district court to find that Batiste, if released, could continue his criminal activity and pose a danger to the public.").

Moreover, Defendant has been noncompliant with medical providers' instructions. In one medical record, a provider noted that Defendant's "uncontrolled HTN is due to inmate's medication non-compliance." [Doc. No. 61-3]. In another, a provider noted that Defendant "is clearly not taking his meds as prescribed . . . ." [Doc. No. 61-4]. Defendant has also failed to adhere to providers' dietary instructions. [Doc. Nos. 61-5, 61-6, 61-7, 61-8]. He states that his health is declining, but he has not helped himself. His noncompliance weighs against reducing his sentence. *See Rollins*, 53 F.4th at 360 (opining that the defendant's noncompliance with treatment while incarcerated supported denying his motion to reduce sentence).

Defendant also provides no indication of how he would afford and receive healthcare of the quality and quantity he receives through the BOP. He has few assets and sources of income. [Doc. Nos. 12; 44, p. 16]. Likewise, his noncompliance with healthcare providers' instructions while incarcerated suggests that he will not seek or adhere to proper healthcare upon release. In essence, it would be *less* compassionate to release Defendant early to a world in which he is unable to afford or obtain healthcare as thorough as he receives while incarcerated. As one court aptly reasoned:

---

already considered in fashioning a sentence because the § 3553(a) factors in such instances will be substantially the same as they were when the sentence was imposed.").

> Ultimately, the goal of compassionate release for medical circumstances is to allow inmates to seek the care they require outside the BOP to improve their condition in a way that the BOP is incapable of offering, or alternatively, allowing inmates the comfort of spending their final moments outside prison. Here, not only is BOP care more than adequate but—were the Court to release Alexander early—rather than facilitating treatment that he requires yet is unable to receive; the Court would, in reality, be taking Alexander's treatment away, *making* his condition terminal. Alexander either does not understand this or fails to fully appreciate it. Be that as it may, releasing Alexander in his current state, with no alternative medical care, would be far from compassionate.

*U.S. v. Alexander*, 2024 WL 4434165, at *4 (S.D. Ill. Oct. 7, 2024) ("Were Alexander to be released, the Court finds it unlikely that he could afford the exorbitant costs of his condition—medication, tri-weekly dialysis, regular monitoring by a P.A., and monthly meetings with a kidney specialist[.]").

Further, Defendant's criminal history shows that he spent years committing crimes involving drugs, burglary, and forgery, along with crimes of violence. [Doc. No. 44, pp. 7-9]. With respect to the instant proceeding and conviction, Defendant knowingly and intentionally distributed pure methamphetamine, a Schedule II controlled substance. [Doc. No. 44, p. 4]. He participated in a large-scale drug trafficking conspiracy. He was also an associate of a member of the "Dirty Money Empire" gang. *Id.* at 5. On February 28, 2023, Defendant admitted he had two firearms. In sum, he has a significant criminal history, and there is every indication that he remains a danger to the public.

What is more, Defendant has only served approximately 25 months of his 110-month sentence. Reducing his sentence at this early date of his incarceration would *not*, considering his criminal history and present length of incarceration, reflect the seriousness of his offense, promote respect for the law, provide just punishment, deter further criminal conduct, or protect the public.

The Court has considered Defendant's contentions that he has not incurred any infractions while incarcerated, that the BOP determined he poses a low risk of recidivism, that he has served two years of incarceration without conflict with others, that he has had good conduct recently, that he has written a letter of remorse, that he has completed self-help courses, and that he has strong family support.  On balance, however, Defendant's medical conditions are not sufficiently extraordinary or compelling, and the factors under Section 3553(a), do not warrant a reduction in sentence.

## Conclusion

For the reasons above, Defendant Joshua Bosley's motion to reduce his sentence, [Doc. No. 51], is **DENIED**.

MONROE, LOUISIANA, this 31st day of March 2025.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE